[Cite as *Brock v. Servpro*, 2022-Ohio-158.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| MIKE BROCK, | : | |
| Appellant, | : | CASE NO. CA2021-06-075 |
| | : | O P I N I O N |
| - vs - | | 1/24/2022 |
| | : | |
| SERVPRO, | : | |
| Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. CV11900716

Caparella-Kraemer & Associates, LLC, and Bradley M. Kraemer, for appellant.

Lindhorst & Dreidame Co., L.P.A., and Barry Fagel and Elizabeth M. Johnson, for appellee.

**S. POWELL, J.**

{¶ 1} Appellant, Mike Brock, appeals the decision of the Butler County Area III Court granting summary judgment in favor of appellee, Servpro, on his claim alleging a breach of contract. For the reasons outlined below, we affirm the trial court's decision.

**Facts and Procedural History**

*Brock's Complaint and Servpro's Answer and Counterclaim*

{¶ 2} On June 10, 2019, Brock, appearing pro se, filed a complaint against Servpro

alleging Servpro had "failed to do a clean-up job" he had contracted Servpro to perform in the basement of his West Chester, Butler County, Ohio home. Brock also claimed Servpro had "left mold and material they were hired to remove" from his basement. Brock sought to recover damages from Servpro in the amount of $6,000.

{¶ 3} On July 2, 2019, Servpro filed an answer to Brock's complaint generally denying Brock's allegations. Servpro also filed a counterclaim against Brock alleging claims of breach of contract, unjust enrichment, and breach of the parties' settlement agreement. Servpro sought to recover damages from Brock in the amount of $6,103.48, the price Servpro originally charged Brock to fix, clean, and restore his flooded basement.

*Brock's Amended Complaint*

{¶ 4} On August 30, 2019, Brock, now represented by counsel, filed a motion for leave to file an amended complaint out of time. The trial court granted Brock's motion on September 3, 2019. Later that day, Brock filed an amended complaint against Servpro alleging claims of breach of contract and fraudulent misrepresentation. As it relates to Brock's breach of contract claim, Brock alleged the following:

> [1.] Plaintiff and Defendant, Servpro entered into a valid and enforceable contract for Defendant to clean and restore the Plaintiff's basement after it flooded.
>
> [2.] Defendant failed to abide by the contract to clean, restore, and fix the flooded basement.
>
> [3.] After Servpro had performed the work, they left the basement with mold and left the materials that they were contracted to remove.
>
> [4.] Servpro's failure to properly perform the work they were hired for resulted in a loss to Plaintiff in the amount of $11,440.43 plus attorney fees and costs.[1]

---

1. The record indicates that $11,440.43 is the amount Brock claims another home restoration company would have charged him to redo the work Servpro already did when fixing, cleaning, and restoring his flooded basement.

*Brock's Deposition Testimony*

{¶ 5}   On June 16, 2020, Servpro took Brock's deposition.  During his deposition, Brock testified, in pertinent part, as follows.

{¶ 6}   In April of 2019, Brock, who is a retired welder, returned from Florida to his West Chester home.  Once there, Brock discovered his sump pump had failed, leaving approximately 12 to 14 inches of water in his basement.  Upon discovering this water, Brock called his insurance carrier who recommended he contact Servpro to clean, fix, and restore his flooded basement.  After speaking with his insurance carrier, Brock then got online and set up an appointment for Servpro to come to his home.  Brock then went and got a "submergible pump" and pumped the water out of his basement "[s]o when Servpro got there, they could see how high the water had been by the line that it had left on the paneling in one part of the basement and the concrete walls in the other part."

{¶ 7}   Several days later, Servpro came to Brock's house with a "bunch of fans" to dry out his once flooded basement.  Once dry, Servpro then began scrubbing Brock's basement floor and removing the damaged wall paneling and ceiling tiles from his basement.  Servpro also had a dumpster delivered to Brock's home to dispose of the debris it had removed from Brock's basement.  Brock testified that it was at this time that "everything just went haywire."

{¶ 8}   Asked for an example of what "went haywire," Brock initially testified that Servpro had moved his washing machine, which caused the waterline connected to the washing machine to break.  Brock also testified that Servpro had "knocked over" the new sump pump he had installed in his basement.  This, according to Brock, caused another two or three inches of water to accumulate on his basement floor.

{¶ 9}   However, upon seeing this new accumulation of water, Brock testified that he pumped the water out of his basement and "repaired" the sump pump by "straighten[ing]

up the pump." Brock also testified that Servpro fixed the broken waterline connected to his washing machine and that Servpro gave him an $800 discount for the inconvenience it had caused by knocking over his new sump pump.

{¶ 10} As another example of what "went haywire," Brock testified that Servpro had driven onto his neighbor's property and created a rut in his neighbor's yard. Brock admitted, however, that the Servpro truck did not cause any damage to his yard and that his neighbor had never complained to him about the rut.

{¶ 11} Brock also testified that he believed Servpro had repeatedly "hit" his garage door with the debris it was hauling out of his basement. Brock testified that these repeated hits to his door "knocked the door off the hinge" and that Servpro "never said a word about it." But, as Brock later testified, he was able to "easily" fix his garage door by bolting the door back together with an electric screwdriver.

{¶ 12} Brock further testified that Servpro had broken a cable that stretched from "the pole to his house" when Servpro was moving the dumpster. Brock testified, however, the cable that Servpro allegedly broke was for an old security alarm system that "did not work," "had no function," and that he "didn't really want the cable repaired." Brock testified that he instead took "nothing but a minute" to roll the cable up and hang it outside his house.

{¶ 13} Brock additionally testified that Servpro had "hid" a pile of wood in a "cubbyhole" in his basement rather than removing the wood from his basement and disposing of it outside in the dumpster. Brock testified that he discovered this wood after he took a flashlight into the basement to look for whatever it was that "smelled like a skunk." Upon discovering the wood, Brock testified that he was "very upset. Because I knew what was stinking."

{¶ 14} After finding the wood in his basement, Brock testified that he called Servpro and said, "I'm going to get somebody else to come and look at this. I said, I'm not going to

pay you." Brock testified that Servpro then offered come back to his house and remove the wood. Brock, however, refused Servpro's offer and instead told Servpro that he was "going to have an expert to look at this whole situation because of everything that you all have done." Brock also testified that he told Servpro they "needed to settle this issue in court."

Thereafter, when asked why he did not just let Servpro remove the wood when offered, Brock testified:

> Because I was very upset with the entire job. And I wanted to get someone who I thought or hoped would be an expert to come in and give me an estimate on what they had done and what should have been done. Because I knew by now I had been scammed.

{¶ 15} Continuing, when asked what he was claiming in damages on his breach of contract and fraudulent misrepresentation claims, Brock testified, "I feel that I have been scammed." Explaining this testimony further, Brock testified:

> Because they did not do the job that they promised to do and then they tried to take advantage of the fact that they could hide that wood. And I think they need to be – just like any other criminal, they need to be shown some justice.

{¶ 16} The following exchange between Brock and Servpro's counsel then occurred:

> Q. Okay. So you think – you're really – as it relates to Servpro, your [sic] not really out any out-of-pocket – out of any money out of pock for anything Servpro did, correct?
>
> A. No.
>
> Q. Okay. You just think they should be punished?
>
> A. I think this is why we have courts of law.
>
> Q. Okay.
>
> A. If you have a disagreement, you take somebody to court.

{¶ 17} The exchange between Brock and Servpro's counsel then continued:

> Q. All right. Now, when you say they didn't do what they promised to do, what did they promise to do that they didn't do?

A. Mainly take that wood out.

Q. Take that wood out?

A. That is the big thing that they did not do.

Q. And did you – well, actually, [Servpro] did offer to take the wood out, right?

A. Yes.

Q. Okay. And you said no?

A. No. I said, we're going to court.[2]

{¶ 18} Concluding this exchange, although admitting that he was fairly satisfied with the work that Servpro had done in fixing, cleaning, and restoring his once flooded basement, Brock testified he had not paid Servpro for any of the work that it had done to his basement.

*Servpro's Motion for Summary Judgment and Brock's Memorandum in Opposition*

{¶ 19} On July 7, 2020, Servpro filed a motion for summary judgment on Brock's breach of contract and fraudulent misrepresentation claims. Servpro's motion also sought summary judgment on its counterclaim against Brock which, as noted above, alleged claims of breach of contract, unjust enrichment, and breach of the parties' settlement agreement. Brock filed a memorandum in opposition to Servpro's motion for summary judgment on August 4, 2020. As part of that memorandum, Brock specifically admitted that he had not suffered any "traditional monetary damages" as a result of Servpro's alleged breach of contract. Brock also acknowledged that there were "no economic damages to speak of" arising out of Servpro's purported breach of contract.

*Magistrate's Decision, Brock's Objection, and the Trial Court's Entry*

{¶ 20} On September 8, 2020, a trial court magistrate issued a decision

---

2. Brock later acknowledged within his deposition testimony that the wood is, in fact, still in his basement and that the wood has not been moved from the area he claims it was hidden by Servpro.

recommending the trial court grant Servpro's motion for summary judgment in its entirety. The magistrate also recommended the trial court enter judgment in favor of Servpro against Brock in the amount of $5,303.48, the price Servpro originally charged Brock to fix, clean, and restore his flooded basement ($6,103.48) minus the $800 discount Servpro had offered to Brock for the inconvenience it had caused by knocking over Brock's new sump pump. In so holding, the magistrate initially stated regarding Brock's breach of contract and fraudulent misrepresentation claims:

> Brock was upset because, while cleaning his basement, Servpro knocked down his sump pump, broke a water line going into the washing machine, caused a rut in his neighbor's yard, knocked his garage door off its hinge, knocked down a security alarm cable, and "hid" wood in a basement cubbyhole. But Brock was able to easily fix the sump pump; Servpro fixed the water line; the rut was in a neighbor's yard and caused no damage to Brock; Brock was able to easily fix the garage door with an electric screwdriver; the broken cable was not being used at the time and caused no damage; and Servpro offered to remove the wood, but Brock refused to let them. When asked [during his deposition], Brock admitted that he was not out-of-pocket any money at all. Instead, he wanted to see Servpro punished, because he felt that he had been "scammed" by their unprofessional behavior.

{¶ 21} The magistrate then noted its finding that Servpro was entitled to summary judgment on Brock's breach of contract claim given that Brock, by his own admission, "has not suffered any compensable damages at all. Nothing that Servpro did or failed to do cost him any money."

{¶ 22} Next, as it relates to Servpro's counterclaim against Brock, the magistrate stated:

> Brock admitted that he did not pay anything to Servpro for its services, although they did the requested work. As noted above, Brock believed that Servpro was unprofessional and caused all kinds of problems while at his house, so he thought he was justified in not paying them for their work. * * * [However, while] Servpro did cause a few problems that irritated Brock, * * * Servpro either fixed the problem itself (water line), offered to

fix the problem (wood in cubbyhole), did not damage Brock at all (rut in neighbor's yard, broken cable), or Brock was able to easily rectify the problems himself (garage door, sump pump).

Therefore, given Brock's admission that he had not paid Servpro for any of the work it had done to fix, clean, and restore his once flooded basement, the magistrate found Servpro was entitled to be paid pursuant to its contract with Brock.

{¶ 23} On September 17, 2020, Brock filed an objection to the magistrate's decision. As part of that objection, Brock specifically stated:

> While we do not object to the dismissal of Plaintiff's [breach of contract and fraudulent misrepresentation] claims, we do object to the ruling concerning [Servpro's] counter-claim and feel it should be remanded for trial.

{¶ 24} To support this claim, Brock argued that he believed summary judgment was improper on Servpro's counterclaim because Servpro caused "a myriad of issues" to his house and "fraudulently concealed debris in a corner to make it appear as it the work had been completed." Brock also argued that Servpro's "[f]ailure to complete the actual work and fraudulently concealing the debris to make it appear as if they had, should be ground for trial and not summary judgment."

{¶ 25} On May 11, 2021, the trial court issued an entry summarily overruling Brock's objection to the magistrate's decision, thereby affirming and adopting the magistrate's decision in full.

**Brock's Appeal**

{¶ 26} Brock now appeals the trial court's decision granting summary judgment to Servpro, raising the following single assignment of error for review.

{¶ 27} THE TRIAL COURT ERRED WHEN IT INCORRECTLY GRANTED SUMMARY JUDGMENT TO SERVPRO ON BROCK'S BREACH OF CONTRACT CLAIM.

{¶ 28} Brock argues the trial court erred by granting summary judgment to Servpro

on his breach of contract claim. We disagree.

*De Novo Standard of Review*

{¶ 29} "This court reviews a trial court's summary judgment decision under a de novo standard." *Faith Lawley, LLC v. McKay*, 12th Dist. Warren No. CA2020-08-052, 2021-Ohio-2156, ¶ 26, citing *Deutsche Bank Natl. Trust Co. v. Sexton*, 12th Dist. Butler No. CA2009-11-288, 2010-Ohio-4802, ¶ 7. "[D]e novo review means that this court uses the same standard the trial court should have used." *Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. Clinton Nos. CA2018-06-003, CA2018-07-004, CA2018-09-012, and CA2018-09-015, 2019-Ohio-4311, ¶ 71; *Morris v. Dobbins Nursing Home,* 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14 ("[d]e novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial").

*Civ.R. 56 Summary Judgment Standard*

{¶ 30} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, LLC v. Dameron*, 12th Dist. Clermont No. CA2015-09-073, 2016-Ohio-878, ¶ 16, citing *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.). "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 12th Dist. Clermont No. CA2020-10-058, 2021-Ohio-1127, ¶ 14. "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frish's Restaurants, Inc.*, 12th Dist. Butler No. CA2020-12-128, 2021-Ohio-1913, ¶ 6, citing *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must

be construed in favor of the nonmoving party." *Assured Admin., LLC v. Young*, 12th Dist. Warren No. CA2019-04-039, 2019-Ohio-3953, ¶ 14, citing *Vanderbilt v. Pier 27, L.L.C.*, 12th Dist. Butler No. CA2013-02-029, 2013-Ohio-5205, ¶ 8.

*Elements of a Breach of Contract Claim*

{¶ 31} "To establish a claim for breach of contract, a plaintiff must prove (1) the existence of a contract, (2) plaintiff fulfilled his or her contractual obligations, (3) defendant failed to fulfill his or her contractual obligations, and (4) due to this failure plaintiff incurred damages." *Capital Real Estate Partners, LLC v. Nelson*, 12th Dist. Warren Nos. CA2018-08-085 and CA2018-08-094, 2019-Ohio-2381, ¶ 13, citing *Roberts v. McCoy*, 12th Dist. Butler No. CA2016-04-071, 2017-Ohio-1329, ¶ 27. Proof that the plaintiff incurred damages is an "essential element of a breach of contract case." *Shelters, Inc. v. Kadivar, M.D.*, 12th Dist. Clermont No. 1073, 1983 Ohio App. LEXIS 13925, *8 (May 25, 1983). "Damages, therefore, are legally essential to a claim for breach of contract." *Phillips v. Columbia Reserve Ltd*, 9th Dist. Lorain No. 20CA011634, 2021-Ohio-1231, ¶ 20. This means that a plaintiff's "[f]ailure to prove the essential element of damages is * * * fatal to a cause of action for breach of contract." *W. & S. Life Ins. Co. v. Bank of New York Mellon*, 1st Dist. Hamilton No. C-170476, 2019-Ohio-388, ¶ 44. This is because, "[w]ithout damages, there can be no remedy for breach of contract." *Byers DiPaola Castle LLC v. Portage Cty. Commrs.*, 11th Dist. Portage No. 2014-P-0047, 2015-Ohio-3089, ¶ 23.

*The Trial Court Did Not Err by Granting Summary Judgment to Servpro*

{¶ 32} Brock argues the trial court erred by granting summary judgment to Servpro on his breach of contract claim. Brock, however, did not raise this issue as part of his objection to the magistrate's decision. Brock, in fact, specifically stated that he *did not* object to the magistrate's decision granting summary judgment to Servpro on his breach of contract claim. The same is true as it relates to Brock's claim alleging Servpro engaged in

fraudulent misrepresentation. Again, as Brock explicitly stated in his objection to the magistrate's decision:

> While we do not object to the dismissal of Plaintiff's [breach of contract and fraudulent misrepresentation] claims, we do object to the ruling concerning [Servpro's] counter-claim and feel it should be remanded for trial.

{¶ 33} By failing to object to the magistrate's decision granting summary judgment to Servpro on his breach of contract claim, Brock has waived all but plain error on appeal his challenge to the trial court's decision affirming and adopting that portion of the magistrate's decision. *See, e.g., Doran v. Doran*, 12th Dist. Warren No. CA2009-05-050, 2009-Ohio-5521, ¶ 26 (although appellant filed objections to the magistrate's decision, appellant nevertheless waived all but plain error on appeal his challenge to matters that appellant did not raise as part of those objections). When applying plain error in a civil case, like the case at bar, this court is required to be "extremely deferential" to the trial court. *Capano & Assocs., L.L.C. v. On Assignment, Inc.*, 12th Dist. Butler No. CA2015-08-153, 2016-Ohio-998, ¶ 13.

{¶ 34} "The Rules of Civil Procedure do not provide for plain-error review." *Jones v. Cleveland Clinic Found.*, 161 Ohio St.3d 337, 2020-Ohio-3780, ¶ 24. Because of this, "[t]he Ohio Supreme Court has set a 'very high standard' for invoking the plain error doctrine in a civil case." *Bryan v. Chytil*, 4th Dist. Ross Nos. 20CA3723, 20CA3725, and 20CA3732, 2021-Ohio-4082, ¶ 200, quoting *Perez v. Falls Financial, Inc.*, 87 Ohio St.3d 371, 375 (2000). Specifically, as the Ohio Supreme Court has stated:

> In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.

*Goldfuss v. Davidson*, 79 Ohio St. 3d 116, 121 (1997), citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982). Therefore, as more recently set forth by the Ohio Supreme Court, "in order for a court to find plain error in a civil case, an appellant must establish (1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process and therefore challenged the legitimacy of the underlying judicial process." *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 40, citing *Goldfuss* at syllabus; *see, e.g., Whitson v. Dixie Imps., Inc.*, 12th Dist. Butler No. CA2019-09-157, 2020-Ohio-1549, ¶ 44 (rejecting appellant's civil plain error claim upon finding the record was devoid of "an obvious legal error affecting the fairness of the proceedings" when applying the civil plain error test set forth by the Ohio Supreme Court in *Morgan*).

*Analysis*

{¶ 35} In this case, and just as the trial court found, Brock readily admitted as part of his deposition testimony that he "has not suffered any compensable damages at all. Nothing that Servpro did or failed to do cost him any money." Therefore, because proof that the plaintiff incurred damages is an essential element of a breach of contract claim, and because a plaintiff's failure to prove the essential element of damages is fatal to a cause of action for breach of contract, the trial court did not commit error, plain or otherwise, by granting summary judgment to Servpro on Brock's breach of contract claim. This holds true no matter how annoyed and irritated Brock may have been with Servpro's alleged unprofessionalism and the professionalism of the individuals who Servpro dispatched to fix, clean, and restore his flooded basement.

**Conclusion**

{¶ 36} For the reasons outlined above, the trial court did not err by granting summary judgment to Servpro on Brock's breach of contract claim. Therefore, because we find no

merit to any of the arguments raised by Brock in support of his assignment of error, Brock's single assignment of error lacks merit and is overruled.

{¶ 37} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.