[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Jones v. Cleveland Clinic Found.*, Slip Opinion No. 2020-Ohio-3780.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3780

JONES, ADMR., APPELLEE, *v*. CLEVELAND CLINIC FOUNDATION ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Jones v. Cleveland Clinic Found.*, Slip Opinion No. 2020-Ohio-3780.]

*Trials—Juror deliberations—Evid.R. 606(B)—Juror's letter after trial had ended expressing regret for changing a vote was evidence of a statement concerning a matter about which the juror was precluded from testifying under the evidence rule—When only a short time had passed after jury restarted deliberations once a substitute juror had been seated, a trial court did not err in failing to give a charge relating to deadlocked deliberations.*

(No. 2019-0390—Submitted March 11, 2020—Decided July 23, 2020.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 107030, 2019-Ohio-347.

_____

**DEWINE, J.**

{¶ 1} This case involves a jury verdict rendered late on a Friday evening in favor of the defense in a medical-malpractice action. After the trial was over, one of the jurors wrote a letter to the court saying that she regretted her vote and had compromised her true beliefs to avoid having to return the following week. The trial court refused to consider the letter and denied the plaintiff's motion for a new trial. But the court of appeals reversed, determining that the letter could properly be considered and that the trial court had abused its discretion in refusing to grant a new trial. We conclude that the court of appeals erred in so doing.

## I. BACKGROUND

### A. ReDon Jones suffers a heart attack after seeking treatment

{¶ 2} ReDon Jones died of a heart attack. About two weeks before his death, he presented to the Cleveland Clinic's Hillcrest Hospital complaining of chest pains. A cardiologist evaluated ReDon and ordered that a stress test be conducted on a treadmill to determine whether there was evidence of reversible ischemia (a decreased blood supply to the heart muscles). The test was performed the following week, and the cardiologist interpreted the results as negative for ischemia. ReDon's fatal heart attack occurred a week later.

{¶ 3} Madora Jones, ReDon's wife and the administrator of his estate, filed a wrongful-death and medical-malpractice action against the cardiologist, Hillcrest Hospital, and the Cleveland Clinic Foundation (collectively, "the Cleveland Clinic"). The lawsuit alleged that the cardiologist had been negligent in failing to order a cardiac catheterization, which would have found ReDon's blocked coronary artery and enabled doctors to save his life.

### B. The jury deliberates and reaches a Friday evening verdict

{¶ 4} The case proceeded to trial, which began on a Monday. The parties rested on Thursday of the same week, and the jury began deliberations on Friday at about 11:00 a.m. At 12:30 p.m., the jury sent a note to the court asking for clarification about the legal definition of the standard of care and alerting the court

that their votes were evenly split. The trial court instructed the jury to re-read the jury instructions and to continue deliberations.

{¶ 5} Approximately half an hour later, the jury took a lunch break that lasted until 2:15 p.m. At 5:00 p.m., the jury submitted a second note asking, "We are still undecided 4-4. What should we do?" After conferring with counsel, the trial court submitted a reply at 5:20 p.m. that stated: "Keep deliberating."

{¶ 6} Sometime after the second note, a juror requested to be excused due to a family emergency. The trial court asked the jury: "Do you want to continue to deliberate if Juror No. 3 has to go?" The jury responded, "Yes." After conferring with the attorneys, the court dismissed the juror and empaneled an alternate juror. Upon the request of Jones's counsel, the trial court—at about 7:20 p.m.—instructed the jurors that they would "have to restart their deliberations" from the beginning with the replacement juror. The court explained that this meant the jury would have to select a new foreperson and supplied the jury with new verdict forms and interrogatories.

{¶ 7} The jury then deliberated for approximately one hour before sending a third note around 8:00 p.m. announcing that it was deadlocked four-to-four. With the agreement of counsel for both parties, the court instructed the jury to keep deliberating. About an hour later, the trial court received another note, which stated:

> We are deadlocked at 50/50. Everyone is very strong in their decision and are not swaying based on the evidence. How long do we have to stay here tonight? Can we go home? We are tired, cranky, and see no change in our opinions, based on the evidence in the foreseeable future.

{¶ 8} By this time, it was around 9:30 p.m. The trial court, with the agreement of counsel, decided to send a note to the jurors saying that they could leave and come back on Monday morning to resume deliberations. After delivering the message to the jury, the bailiff reported that a couple of jurors reacted to the judge's note by stating, "Come back for what? We're not going to change." In response, the trial court determined that it would read the standard jury instruction relating to deadlocked deliberations, commonly known as the *Howard* charge, *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), paragraph two of the syllabus, and discussed with counsel about whether it should read the charge that night or on Monday morning.

{¶ 9} At approximately 10:00 p.m., while the judge and the attorneys were still discussing the timing of the *Howard* charge, the bailiff announced that the jury had reached a verdict. The jury returned to the courtroom, and the trial court reviewed the verdict forms and interrogatories. The court realized that the jurors had not completed the general-verdict form and instructed them to return to the jury room to complete this form. At this point, after having watched the judge's initial review of the forms, Jones's counsel said, "I don't think we should accept the verdict from the jury because of the circumstances involved in the case; that they said they were tired, they were cranky, and the Judge said they want to go home." Jones's counsel, however, did not move for a mistrial.

{¶ 10} When the jurors returned to the courtroom, the trial court read the verdict form and announced the jury had reached a six-to-two verdict in the defense's favor. The court polled the six jurors in the majority, and each juror confirmed their votes.

## C. The postverdict motion for mistrial

{¶ 11} Jones subsequently filed a motion for a mistrial, asserting that the court should have sua sponte declared a mistrial on the night of deliberations rather than accept the jury's verdict. "Reasonable minds can only conclude," Jones

argued, "that [in] moving from [a] strongly deadlocked position to a complete about-face less than 30 minutes after being instructed to return Monday at 8:30 am that certain jurors surrendered their honest opinion as to the weight of the evidence for the mere purpose of returning a verdict and going home."

{¶ 12} One month after the trial, while the motion was pending, the trial court received a letter from a juror. In the letter, the juror explained that her juror service had been stressful and said that she had ultimately agreed to a defense verdict in order to avoid coming back the following week. She had "felt very strongly that the plaintiff was correct in the case and the defendant was negligent." "Yet in the end, to speed the process along," she wrote, "I and one other juror changed our votes as the hour approached 11 p.m. Now I have to live with that decision which went against what I believed was right."

{¶ 13} The trial court denied Jones's motion for a mistrial. It noted that "while it [was] nearly universal that jurors wish to keep their jury duty as short as possible," there was nothing coercive about requiring jurors to return on a Monday following a week of jury duty. In deciding the motion, the court did not consider the juror's letter, concluding that because the juror's statement did not suggest a threat, bribe, or impropriety by an officer of the court, Evid.R. 606(B) precluded its use to attack the verdict.

### D. The appeal

{¶ 14} Jones appealed to the Eighth District Court of Appeals. Her first assignment of error challenged the trial court's refusal to order a new trial. The court of appeals held that Evid.R. 606(B) did not preclude the court from considering the letter because "the juror who wrote the letter did not testify at a subsequent proceeding concerning the original verdict." 2019-Ohio-347, 119 N.E.3d 490, ¶ 35. The court further found that "[n]otwithstanding the juror's letter, given the totality of the circumstances surrounding the jury's deliberations, the trial court's denial of [Jones's] motion for a mistrial was an abuse of discretion." *Id.* at

¶ 29. The court also concluded that the trial court had committed plain error in not giving a *Howard* charge after receiving the third and fourth jury notes.

{¶ 15} After determining that the trial court had erred in not ordering a new trial, the court of appeals went on to sustain two other assignments of error, which related to the trial court's rulings on pretrial motions. The court of appeals did not rule on a final assignment of error, which argued that the verdict was against the manifest weight of the evidence.

{¶ 16} The Cleveland Clinic sought discretionary review in this court. We agreed to consider two propositions of law. The first proposition of law asserts that when the jurors are polled and confirm their assent to the verdict, the trial court should not inquire into the motivations for the jury's verdict except under limited circumstances. The second proposition of law presents a related question of whether Evid.R. 606(B) precludes a juror statement concerning a matter that the juror would be precluded from testifying about under the rule.

## II. ANALYSIS

### A. The court of appeals erred in granting a new trial based on juror deliberations

{¶ 17} In concluding that the trial court should have granted a new trial, the court of appeals reached two subsidiary conclusions: (1) that the trial court erred in failing to give a *Howard* charge and (2) that the juror's letter should have been considered by the trial court. It is not clear from the court of appeals' opinion the extent to which each of these subsidiary conclusions influenced the court's ultimate decision on the new trial issue. For example, at one point, the court declares that "notwithstanding the juror's letter," 2019-Ohio-347, 119 N.E.3d 490, at ¶ 29, the trial court erred in granting a new trial. But the court also says that the letter "provides even more support," *id.* at ¶ 30, for granting a new trial and then engages in extensive analysis of whether the letter should have been considered. In our reading, the court of appeals' analysis of both the juror letter and the *Howard* charge

issue is intertwined with its analysis of the new-trial issue. Thus, we will consider both subsidiary issues before we get to the ultimate question of whether the court of appeals was correct in ordering a new trial based on Jones's first assignment of error.

*1. The trial court properly refused to consider the juror letter*

**{¶ 18}** The question whether a juror may testify about her mental or emotional processes during deliberations to impeach a jury verdict is not a novel one. A firmly established common-law rule prohibits the admission of such testimony. *State v. Hessler*, 90 Ohio St.3d 108, 123, 734 N.E.2d 1237 (2000). The principle "protects the privacy of a jury's deliberations from inquiry and promotes the finality of jury verdicts." *State v. Mason,* 82 Ohio St.3d 144, 167, 694 N.E.2d 932 (1998). Evid.R. 606(B), which is grounded in the common-law rule, says:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. A juror's affidavit or evidence of any statement

by the juror concerning a matter about which the juror would be precluded from testifying will not be received for these purposes.

{¶ 19} Evid.R. 606(B) prohibits juror testimony to impeach a verdict save for two circumstances. First, under what is commonly referred to as the "aliunde rule," a juror may testify about jury misconduct when evidence of that misconduct arises from a source outside of the jury. *State v. Schiebel*, 55 Ohio St.3d 71, 75-76, 564 N.E.2d 54 (1990). Second, even without outside evidence, a juror may testify about "any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court." Evid.R. 606(B). Plainly, neither exception applies here.

{¶ 20} Looking to the explicit terms of the rule, there was no "outside evidence" that any "outside influence was improperly brought to bear on any juror." A juror's own impressions of deliberations are not "outside evidence." *Schiebel* at 75. And all that Jones offers aside from the juror note is conjecture that jurors felt pressured to change their votes because of a desire to avoid further deliberations and because of pressure from other jurors who felt the same way. This does not amount to an "outside influence." Rather, what Jones complains of is exactly the type of internal juror dynamics that the aliunde rule is designed to keep sacrosanct. Nor has Jones presented any evidence of a threat, bribe, attempted threat or bribe, or impropriety by an officer of the court.

{¶ 21} Nonetheless, the Eighth District found the rule to be "wholly inapplicable" because "the juror who wrote the letter did not testify at a subsequent proceeding concerning the original verdict." 2019-Ohio-347, 119 N.E.3d 490, at ¶ 35. In other words, the Eighth District construed Evid.R. 606(B) to preclude only *sworn* juror testimony. That is a misreading of the rule.

{¶ 22} The last sentence of the rule is unambiguous: "A juror's affidavit *or evidence of any statement* by the juror concerning a matter about which the juror would be precluded from testifying will not be received for these purposes."

8

(Emphasis added.) Evid.R. 606(B). The juror letter was evidence of a statement concerning a matter about which the juror was precluded from testifying under the rule. Thus, it could not be used to impeach the verdict. The trial court got it right when it refused to consider the letter; the court of appeals was wrong.

### 2. *The trial court did not err in failing to provide a* Howard *charge*

{¶ 23} At the time the jury reached its verdict, the trial court had decided to provide a *Howard* charge and was discussing with counsel the proper timing of that charge. Previous to this, Jones had not requested that the trial court administer a *Howard* charge. Nevertheless, the court of appeals concluded that it was plain error for the court not to have sua sponte administered a *Howard* charge after the jury sent its third and fourth notes to the judge.

{¶ 24} The Rules of Civil Procedure do not provide for plain-error review. Indeed, " 'the idea that parties must bear the cost of their own mistakes at trial is a central presupposition of our adversarial system of justice.' " *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997), quoting *Montalvo v. Lapez*, 77 Haw. 282, 305, 884 P.2d 345 (1994), (Nakayama, J., concurring in part and dissenting in part). Thus, we have explained that in recognizing plain error in a civil case, a court must proceed with utmost caution, limiting use of the doctrine to "the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Id.* Nothing in the facts before us makes this one of those extremely rare cases in which civil plain-error review is appropriate. *Id.* Indeed, we find no error, plain or otherwise.

{¶ 25} A *Howard* charge reminds deadlocked jurors that their duty is to decide the case if they can conscientiously do so. Ohio Jury Instructions, CV Section 31.907 (Rev.Feb. 25, 2012). It challenges them to try a final time to reach consensus. *State v. Robb,* 88 Ohio St.3d 59, 81, 723 N.E.2d 1019 (2000). There is

no set period of time after which a court must give a *Howard* charge. Indeed, the trial judge, who has followed the course of juror deliberations and who has the benefit of nuanced observation of the jury, is generally in a far better position than a reviewing court to determine the appropriate timing of such a charge. Thus, a trial court's decision whether and when to provide the instruction is a matter within the court's discretion and is reviewed only for an abuse of that discretion. *See State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 37.

{¶ 26} The court of appeals concluded that the judge should have given the *Howard* charge when the jury sent its third note to the judge around 8:00 p.m. Remember, though, that only an hour before, the jury had been instructed to restart its deliberations from the beginning upon the replacement of the juror who was excused. In light of the relatively short time that had elapsed since deliberations commenced anew, we find no abuse of discretion in the trial court's failure to supply a *Howard* charge after the third juror note.

{¶ 27} Nor do we find any error in the trial court's failure to give a *Howard* charge after the fourth juror note. Upon receiving the fourth note, the trial court instructed the jury to return the next week, determined to provide a *Howard* charge, and undertook a discussion with counsel about the proper timing of such a charge. Only the abrupt announcement that the jury had reached a verdict prevented the charge from being administered.

*3. The trial court properly refused to order a new trial*

{¶ 28} Having concluded that the court of appeals erred in its conclusions that the trial court should have considered the juror's letter and should have given a *Howard* charge, we turn to the ultimate question: should the trial court have granted a new trial?

{¶ 29} We agree with the court of appeals that Jones's postverdict motion for a mistrial is best analyzed under the standards for a motion for new trial set forth in Civ.R. 59. Civ.R. 59(A) allows for a new trial upon the following grounds:

> (1) Irregularity in the proceedings of the court [or] jury, * * *
> or abuse of discretion, by which an aggrieved party was prevented
> from having a fair trial;
>
> (2) Misconduct of the jury or prevailing party.

In addition, the rule contains a catch-all provision that a new trial may be granted "in the sound discretion of the trial court for good cause shown." Civ.R. 59(A).

{¶ 30} We find no misconduct or irregularity that warrants a new trial. Having excluded the juror's letter, we are left with the mere fact that the jury broke a deadlock and returned a verdict soon after it was told to come back on Monday. There is no evidence that the jurors breached their oaths. There is no evidence of any improper outside influence. And nothing in the jury's notes to the judge suggests any misconduct.

{¶ 31} Furthermore, there was nothing extraordinary about the length of the jury deliberations here. The jury had only been deliberating for a single day—about 12 hours inclusive of breaks—at the time it reached its verdict. And from the time that it was instructed to begin deliberations anew, the jury had been deliberating for fewer than three hours.

{¶ 32} It is true that deliberations extended fairly late into Friday night. But this occurred at the jury's choice—the judge asked the jurors if they wanted to continue deliberations when one juror had to leave, and they responded that they did. And while the jury was told that it would have to come back the next week, there is nothing unusual about jury deliberations proceeding into the following week.

{¶ 33} Thus, we find none of the grounds set forth in Civ.R. 59(A)(1) and (2) to be present in this case. As to the catch-all provision, the decision whether to grant a new trial is entrusted "to the sound discretion of the trial court." Civ.R.

11

59(A). We find no abuse of that discretion. *See Jenkins v. Krieger*, 67 Ohio St.2d 314, 320, 423 N.E.2d 856 (1981). Thus, the court of appeals erred in concluding that the matters relating to the jury deliberations warranted a new trial.

## B. Matters to be considered on remand

{¶ 34} The decision below focused primarily on whether to grant a new trial based on the issues surrounding the jury deliberations. But after resolving those issues, the court of appeals reached two other assignments of error. It concluded that the trial court erred in granting the Cleveland Clinic's motion in limine and that the trial court failed to decide discovery motions filed by Jones. The court also declined to reach an assignment of error that asserted that the jury's verdict was against the weight of the evidence. Though these issues are beyond the propositions of law we accepted, we need to say something about them in order to appropriately frame a remand order.

{¶ 35} The court of appeals found that the trial court erred in granting a motion in limine that precluded Jones from introducing a portion of the deposition testimony of a Cleveland Clinic cardiac sonographer. Because we declined to accept a proposition of law on that issue, we have no occasion to revisit the court of appeals' decision on it in this proceeding.

{¶ 36} The court of appeals did not, however, discuss whether Jones suffered any prejudice as a result of the trial court's ruling, that is, whether the jury would have arrived at a different verdict were it not for the purported error. *See Hayward v. Summa Health Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 25. In its brief, the Cleveland Clinic asserts that the Eighth District never analyzed whether Jones was prejudiced, noting that Jones did not use at trial other related parts of the deposition transcript that the trial court held were admissible. This is a matter appropriately left to the court of appeals in the first instance. Thus, on remand, the court of appeals should determine whether Jones

was prejudiced by the trial court's limitation on the use of the cardiac sonographer's testimony.

{¶ 37} In a single paragraph at the close of the opinion, the court of appeals sustained an assignment of error relating to the trial court's failure to rule on pretrial discovery motions filed by Jones and directed the court to rule on the motions upon remand. The Cleveland Clinic cites the general rule that when a trial court fails to rule on a pretrial motion, it is presumed to have been overruled, *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998), and argues that any error concerning the motions was not prejudicial. Again, these arguments are beyond the propositions of law accepted by this court and should be addressed to the court of appeals on remand.

{¶ 38} Finally, the court of appeals did not reach Jones's final assignment of error, which asserted that the jury verdict was against the manifest weight of the evidence. The court should do so on remand.

### III. CONCLUSION

{¶ 39} The court of appeals erred when it sustained Jones's first assignment of error and held that the trial court should have ordered a new trial. We remand the case to the court of appeals for consideration of the remaining assignments of error in a manner consistent with this opinion.

Judgment reversed<br>and cause remanded.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, CALLAHAN, and STEWART, JJ., concur.

STEWART, J., concurs, with an opinion.

LYNNE S. CALLAHAN, J., of the Ninth District Court of Appeals, sitting for DONNELLY, J.

—————————

**STEWART, J., concurring.**

{¶ 40} I concur in the decision reached by the majority, but I write separately to state my concerns about the trial court's management of the jury in this case and the perils that improper management can have on jury verdicts.

{¶ 41} "Jury service is a public duty, and every citizen should willingly serve when called upon. In return, it behooves society to make jury service as pleasant and as little burdensome as possible, rather than rendering it an ordeal or impossible for many." *State v. Osborne*, 10th Dist. Franklin No. 75AP-327, 1976 Ohio App. LEXIS 6149, at *30 (May 11, 1976) (Whiteside, J., concurring).

{¶ 42} The nearly 11 hours that the jury deliberated on the final day of this case became an ordeal. And those deliberations did not begin until after the jury had sat through closing arguments and the jury charge that morning. By the end of the day, the jury had sent a note to the court indicating that the jurors were "tired" and "cranky." It should come as no surprise that the jurors were tired and cranky under these circumstances. Even the court and counsel for appellants blamed their fatigue for their inability to accurately recollect the timing of the day's events. Under these conditions, the jurors could not have been expected to perform to the best of their ability.

{¶ 43} By not suspending deliberations for the day, the court tried to accommodate the jury's expectation that the court would conclude the jury's service that day. The court told the prospective jurors during voir dire, "I promise you this case will be efficient and move. It will be in your hands by Friday so you can at least—that is my promise to you. If I don't get there, I failed." True, the court simply promised the jury that it would begin deliberations by Friday (a promise that the court kept). But it is also easy to see that the jurors might have understood the court's goal to be that they would conclude their service by the end of the day on Friday. It goes without saying that jurors have lives outside the courtroom. And unlike the personnel being paid to perform their respective duties during the trial, or the parties who have a direct stake in the jury's verdict, citizens

who serve on a jury gain no tangible benefit for doing so, apart from a small per diem meant to cover their expenses. It is just their civic duty to serve. But our system of jury service does jurors a disservice by the way we sometimes treat them. One example is by asking them to change their life plans at the last minute. Trial courts could avoid this by refraining from making promises that risk creating expectations the trial court may be unable to keep. It is unfair to the jurors and unfair to the parties to require a jury to render a verdict when the primary focus of the jurors is the end of their jury service.

{¶ 44} These problems are all apparent in this case. Regardless of which side prevails, the confidence in a jury verdict rendered under circumstances like these is tenuous at best. The option the court gave to the jury of continuing deliberations into the late hours of a Friday evening or returning on Monday morning left the jury between a rock and a hard place. It is no surprise that under circumstances like this, jurors might put their own personal interests above the interests of the parties.

{¶ 45} " 'Twenty-nine percent of adult Americans have served as trial jurors at some point in their lives. The remaining 71% of us live with, live next to, work with, or otherwise hear about the experiences—good and bad—from the 29% who have lived it first-hand.' " National Center for State Courts Center for Jury Studies, Tom Munsterman, Director Emeritus, Mission Statement, http://www.ncsc-jurystudies.org/who-we-are/mission (accessed June 25, 2020) [https://perma.cc/HN33-EY4R]. The judiciary must ensure that citizens endure the least amount of burden, hardship, and inconvenience as possible when serving on a jury and that parties have their cases decided fairly and on the merits. To the extent there is anything that interferes with this responsibility, we need to do better. Not doing so fails to respect and appreciate the importance of jury service and undermines the judicial system.

_____

The Mellino Law Firm, L.L.C., Christopher M. Mellino, Meghan C. Lewallen, Margo Kay Moore, and Calder C. Mellino; and Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Louis E. Grube, for appellee.

Roetzel & Andress, L.P.A., Stephen W. Funk, Emily K. Anglewicz, R. Mark Jones, and Tammi J. Lees, for appellants.

Reminger Co., L.L.C., and Brian D. Sullivan, urging reversal for amicus curiae Academy of Medicine of Cleveland and Northern Ohio.

_____