[Cite as *State ex rel. Yost, Atty. Gen. v. Anthony*, 2022-Ohio-3188.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

STATE OF OHIO EX REL.
 DAVID YOST, ATTORNEY
 GENERAL,                                :

                                         :

     Plaintiff-Appellee,          Case No.  22CA2
                                         :

                           vs.
                                         :

MARK ANTHONY, et al.,                        DECISION AND
                                  JUDGMENT ENTRY

                                         :

     Defendants-Appellants.
                                         :
_____

APPEARANCES:

Mary C. Ansbro, Columbus, Ohio, for appellants.

Michael E. Idzkowski, Timothy J. Kern, and Allen M. Vender,
Columbus, Ohio, for appellee.
_____

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:9-7-22
ABELE, J.

   **{¶1}**  This is an appeal from a Hocking County Common Pleas

Court judgment that found Mark Anthony, defendant below and

appellant herein, and related entities, in contempt of a court

order.[1]

---

   [1] In general, "a court order finding a party in contempt and
imposing a sentence conditioned on the failure to purge is a
final, appealable order on the issue whether the party is in
contempt of court." *Docks Venture, L.L.C. v. Dashing Pacific*

**{¶2}** Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR
[BY] FAILING TO GIVE DEFENDANT MARK ANTHONY
A CONTINUANCE TO OBTAIN COUNSEL OF HIS
CHOICE."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR
[BY] FAILING TO SCREEN DEFENDANT MARK
ANTHONY FOR APPOINTED COUNSEL."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR
IN MAKING THE PURGE CONDITION COMPLAINCE
[SIC] WITH THE PAYMENT PLAN."

**{¶3}** On July 19, 2013, the State of Ohio, through its Attorney General, filed a complaint for injunctive relief and civil penalties based upon environmental violations that appellant and related entities had committed. The parties later resolved the allegations via an April 11, 2017 consent order. The consent order required appellant and the related entities to pay a $100,000 civil penalty.

**{¶4}** On September 27, 2021, appellee filed a motion for a judgment debtor examination under R.C. 2333.09. The trial court

---

*Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 23. Additionally, "a contemnor may have an additional appeal on the question whether the purge conditions have been met following execution of sentence on the failure to purge." *Id.*

granted the motion and set the matter for an October 21, 2021 hearing.

{¶5} On October 6, 2021, appellee filed a motion to show cause and to hold appellant (and related entities) in contempt for the failure to abide by the consent order. In particular, appellee alleged that, since the date of the consent order, appellant and related entities made only one $1,500 payment. Appellee asked the court to schedule a hearing to allow appellant and related entities to show cause why they should not be held in contempt of court.

{¶6} Subsequently, the trial court entered an order that directed appellant (as the authorized representative of the related entities) to appear before the court and to show cause why appellant should not be found in contempt of the consent order. The court issued a summons and that notified appellant (1) of the date and time of the show-cause hearing, (2) of his right to counsel and that he could apply for a public defender or court-appointed counsel, (3) that the court could refuse to grant appellant a continuance at the time of the hearing for the purpose of obtaining counsel if appellant failed to make a good faith effort to retain counsel or to obtain a public defender, and (4) of the potential sanctions that the court could impose.

{¶7} On November 8, 2021, appellant was successfully served with the summons and, on December 2, 2021, the trial court scheduled the contempt hearing to be held on December 20, 2021.

{¶8} On December 20, 2021, appellant filed a written motion to continue the hearing. Appellant stated that after he received the notice to appear, he contacted his counsel, Eugene Battisti, but could not reach him. Appellant claimed that Battisti later returned appellant's call, but Battisti informed appellant that he would be unable to attend the contempt hearing. Appellant asserted that Battisti had agreed to represent appellant and would be available in mid to late January. Appellant thus requested the court to continue the matter until Battisti could appear.

{¶9} After consideration, the trial court overruled appellant's motion for a continuance. The court stated that (1) appellant had been served with the contempt motion six weeks earlier, on November 8, 2021, and (2) on December 2, 2021 the court sent notice of the hearing date to appellant. The court found that appellant thus had sufficient notice of the hearing date and adequate time to retain an attorney to represent him at the contempt hearing. Consequently, the court overruled his motion.

{¶10} At the December 20, 2021 contempt hearing, appellee presented evidence that (1) appellant agreed to the April 11, 2017 consent order that required him to pay $100,000 pursuant to a schedule, and (2) appellant has made one $1,500 payment.

{¶11} Appellant, appearing pro se, asserted that he does not have the income to pay the amount owed under the consent order. He also stated that he would like his attorney to be present, "I want legal representation, but we're marching forward. I don't know how to proceed with it all." Appellant also declined the opportunity to be sworn in and to testify, but instead opted to present an argument. During his argument, he stated, "Inability to pay is not contempt of court."

{¶12} Appellee advised the court that it did not oppose allowing appellant to present an argument. Appellee explained, however, that if appellant claims inability to pay, appellee wanted an opportunity to cross-examine appellant. The court stated that it would treat appellant's inability to pay as an argument.

{¶13} Appellant also suggested that the trial court hold a judgment debtor hearing to consider appellant's ability to pay. Appellee stated that the parties attempted to schedule a judgment debtor hearing a few months earlier, but appellant "ignored" the notice. Appellee further stated that it intended

to request a judgment debtor hearing in the future if the court finds appellant in contempt and appellant fails to pay as ordered.

{¶14} On December 30, 2021, the trial court found appellant and the other defendants in contempt for the failure to pay the amounts due under the consent order. The court sanctioned appellant to 30 days in jail, but stated that he could purge the contempt and avoid jail by paying $5,000 within 30 days and paying $5,000 per quarter until the entire amount is satisfied. This appeal followed.

I

{¶15} In his first assignment of error, appellant asserts that the trial court erred by failing to continue the contempt hearing so that he could obtain counsel of his choosing. Appellant argues that the court's action violated his constitutional right to counsel.

{¶16} Appellee, on the other hand, contends that the trial court did not abuse its discretion by denying appellant's motion to continue the contempt hearing. Appellee points out that appellant had six weeks to obtain counsel to represent him and that he failed to do so. Appellee thus claims that appellant cannot complain on appeal that the trial court wrongly denied

his motion to continue and wrongly deprived him of any alleged right to counsel.

{¶17} "The determination whether to grant a continuance is entrusted to the broad discretion of the trial court." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 147, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus; *accord State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.2d. 1138, ¶ 92. Consequently, "'[a]n appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.'" *State v. Jones*, 91 Ohio St.3d 335, 342, 744 N.E.2d 1163 (2001), quoting *Unger*, 67 Ohio St.2d at 67; *e.g., In re C.M.*, 4th Dist. Athens No. 17CA16, 2017-Ohio-9037, ¶ 40; *In re A.S.*, 4th Dist. Pike No. 16CA878, 2017-Ohio-1166, ¶ 43.

{¶18} "'[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. "An abuse of discretion includes a situation in which a trial court did not engage in a '"sound reasoning process."'" *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, quoting *State v.*

*Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The abuse-of-discretion standard is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court. *Darmond* at ¶ 34.

{¶19} A trial court that is considering a motion to continue should "[w]eigh[] against any potential prejudice to a defendant * * * concerns such as a court's right to control its own docket against the public's interest in the prompt and efficient dispatch of justice." *Unger*, 67 Ohio St.2d at 67. A court also should consider:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68; *accord State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 147; *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 45.

{¶20} An appellate court that is reviewing whether a trial court abused its discretion by denying a motion to continue applies "a balancing test" that recognizes "all [of] the

competing considerations." *Unger*, 67 Ohio St.2d at 67.

Moreover, we observe that "'[t]here are no mechanical tests for

deciding when a denial of a continuance is so arbitrary as to

violate due process. The answer must be found in the

circumstances present in every case, particularly in the reasons

presented to the trial judge at the time the request is

denied.'" *Id.*, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84

S.Ct. 841, 11 L.Ed.2d 921 (1964); *State v. Broom*, 40 Ohio St.3d

277, 288, 533 N.E.2d 682 (1988) ("Obviously, not every denial of

a continuance constitutes a denial of due process.").

Furthermore, the complaining party "must show how he was

prejudiced by the denial of the continuance before there can be

a finding of prejudicial error." *Broom*, 40 Ohio St.3d at 288.

{¶21} In the case sub judice, we do not believe that the

trial court abused its discretion by overruling appellant's

motion to continue the contempt hearing. Instead, we believe

that the trial court reasonably could have determined that

appellant had sufficient notice of the hearing and had ample

time to obtain counsel. The court noted that appellant received

service of the summons on November 8, 2021. The summons advised

appellant that (1) he had a right to counsel, (2) he had a right

to appointed counsel if indigent, and (3) the court may refuse

to grant a continuance at the time of the hearing if appellant

HOCKING, 22CA2

fails to make a good faith effort to obtain counsel.[2]  The court

also observed that on December 2, 2021, the court issued a

---

[2] We observe that the summons in the case sub judice appears to be drawn from language in R.C. 2705.031(C)(1) through (4). Those provisions apply in failure-to-pay child and spousal support cases and state as follows:

(C) In any contempt action initiated pursuant to division (B) of this section, the accused shall appear upon the summons and order to appear that is issued by the court. The summons shall include all of the following:
(1) Notice that failure to appear may result in the issuance of an order of arrest, and in cases involving alleged failure to pay support, the issuance of an order for the payment of support by withholding an amount from the personal earnings of the accused or by withholding or deducting an amount from some other asset of the accused;
(2) Notice that the accused has a right to counsel, and that if indigent, the accused must apply for a public defender or court appointed counsel within three business days after receipt of the summons;
(3) Notice that the court may refuse to grant a continuance at the time of the hearing for the purpose of the accused obtaining counsel, if the accused fails to make a good faith effort to retain counsel or to obtain a public defender;
(4) Notice of the potential penalties that could be imposed upon the accused, if the accused is found guilty of contempt for failure to pay support or for a failure to comply with, or an interference with, a parenting time or visitation order or decree[.]

We do not find it necessary to discuss whether these same requirements apply in a civil-contempt proceeding that does not involve a failure to pay support.  We simply note that the summons that the trial court issued to appellant appears to mirror most of the same language that appears in R.C. 2705.031(C)(1) through (4), and that including this language appears to satisfy the Due Process Clause.  *See generally Turner v. Rogers*, 564 U.S. 431, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011);

notice that the contempt hearing would be held on December 20, 2021. This notice further stated that "all parties and counsel shall appear."

{¶22} Thus, our review of the record reveals that approximately six weeks before the contempt hearing, the court notified appellant of his right to counsel and the potential consequences for the failure to have counsel present at the contempt hearing (i.e., the court could deny a motion to continue based upon appellant's failure to obtain counsel in time for the hearing). Appellant claimed that he attempted to retain private counsel for the hearing, but appellant did not explain why he could not have retained alternate counsel or could not have requested a continuance before than the date of the contempt hearing. Under these circumstances, we are unable to conclude that the trial court's denial of appellant's motion to continue the contempt hearing to obtain counsel constitutes an abuse of discretion.

{¶23} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

---

*Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297.

{¶24} In his second assignment of error, appellant asserts that the trial court erred by failing to inquire whether appellant may have been entitled to appointed counsel. Appellant points out that he alleged that he did not have the ability to pay the balance due under the $100,000 consent order and his claimed inability to pay indicates that the trial court should have sua sponte considered appellant's eligibility for appointed counsel.

{¶25} Initially, we observe that at no time did appellant request the trial court to appoint counsel to represent him in the contempt proceeding, even though the summons that appellant received explicitly informed him that he had a right to appointed counsel if indigent. Furthermore, appellant did not state that he had an inability to obtain counsel. In fact, appellant claimed the opposite. Appellant informed the trial court that he had contacted a private attorney and that this attorney had agreed to represent appellant, but was unavailable on the date of the contempt hearing. *State v. Bush*, 97 Ohio App.3d 20, 25, 646 N.E.2d 193 (4th Dist.1994) (concluding that defendant waived right to counsel when he "unambiguously told the court that he was able to obtain counsel").

{¶26} Under the circumstances present in the case sub judice, we believe that appellant forfeited the right to

challenge on appeal the trial court's failure to inquire into appellant's indigency and whether he qualified for appointed counsel. *See In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398, ¶ 18 (applying plain-error review to claim regarding appointment of independent counsel for child in dependency proceeding when none of the parties requested trial court to appoint independent counsel for the child). Appellate courts may, however, in certain circumstances, consider a forfeited argument using a plain-error analysis. *See Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27 (reviewing court has discretion to consider forfeited constitutional challenges); *see also Hill v. Urbana*, 79 Ohio St.3d 130, 133-34, 679 N.E.2d 1109 (1997), citing *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus (stating that "[e]ven where [forfeiture] is clear, [appellate] court[s] reserve[] the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it'"); *State v. Pyles*, 7th Dist. Mahoning No. 13-MA-22, 2015-Ohio-5594, ¶ 82, quoting *State v. Jones*, 7th Dist. Mahoning No. 06-MA-109, 2008-Ohio-1541, ¶ 65 (the plain error doctrine "'is a wholly discretionary doctrine'"); *DeVan v. Cuyahoga Cty. Bd. of Revision*, 2015-Ohio-4279, 45 N.E.3d 661, ¶

9 (8th Dist.) (appellate court retains discretion to consider forfeited argument); *see Rosales-Mireles v. United States*, ___ U.S. ___, 138 S.Ct. 1897, 1904, 201 L.Ed.2d 376 (2018) (court has discretion whether to recognize plain error).

**{¶27}** For the plain-error doctrine to apply, the party claiming error must establish (1) that "'an error, i.e., a deviation from a legal rule" occurred, (2) that the error was "'an "obvious" defect in the trial proceedings,'" and (3) that this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the trial.'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001, 1003 (1982) ("A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings."). For an error to be "plain" or "obvious," the error must be plain "under current law" "at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 467, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *accord Barnes*, 94 Ohio St.3d at 27; *State v. G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, ¶ 14. However, the plain error

doctrine is not readily invoked in civil cases.  Instead, an appellate court "must proceed with the utmost caution" when applying the plain error doctrine in civil cases.  *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).  The Ohio Supreme Court has set a "very high standard" for invoking the plain error doctrine in a civil case. *Perez v. Falls Financial, Inc.*, 87 Ohio St.3d 371, 721 N.E.2d 47 (2000).  Thus, "the doctrine is sharply limited to the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."  *Goldfuss*, 79 Ohio St.3d at 122; *accord Jones v. Cleveland Clinic Found.*, 161 Ohio St.3d 337, 2020-Ohio-3780, 163 N.E.3d 501, ¶ 24*; Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 43. Moreover, appellate courts "'should be hesitant to decide [forfeited errors] for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination.'" *Risner* at ¶ 28, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2; *accord Mark v. Mellott Mfg. Co., Inc.*, 106 Ohio App.3d 571, 589, 666 N.E.2d 631 (4th

Dist.1995) ("Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process."). Additionally, "[t]he plain error doctrine should never be applied to reverse a civil judgment * * * to allow litigation of issues which could easily have been raised and determined in the initial trial." *Goldfuss*, 79 Ohio St.3d at 122.

{¶28} After our review in the case sub judice, we do not believe that the trial court plainly erred by failing to sua sponte investigate whether appellant was indigent and entitled to appointed counsel. Once again we note that appellant clearly informed the court that appellant had contacted a private attorney and that this attorney had agreed to represent appellant. Appellant did not state that he could not afford to pay a private attorney. Instead, by stating that he had contacted a private attorney and that this attorney agreed to represent him, appellant indicated to the court that he possessed the financial ability to retain this private attorney. The court did not have a duty to doubt appellant's claimed ability to hire this attorney and to independently inquire whether appellant qualified for appointed counsel, especially in light of the fact that appellant did not ask the court to appoint counsel. *Cf. Souders v. Souders*, 1st Dist. Hamilton No.

C-150552, 2016-Ohio-3522, ¶ 18 (trial court did not violate right to court-appointed counsel in failure-to-pay-child-support case when father did not follow procedures to obtain public defender or court-appointed counsel, did not file an indigency affidavit, and did not submit any other documentation to support claim that he was indigent).

**{¶29}** Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III

**{¶30}** In his third assignment of error, appellant asserts that the trial court erred by failing to give him an adequate opportunity to purge his contempt.  In particular, appellant contends that the trial court's purge condition – complying with a three-year payment schedule – is not valid because it attempts to regulate appellant's future conduct.  Accordingly, within his third assignment of error appellant asserts that the trial court did not enter a finding regarding his ability to pay.

**{¶31}** Trial courts generally have "broad discretion in contempt proceedings," including when imposing contempt sanctions.  *Schuman v. Cranford*, 4th Dist. Vinton No. 02CA571, 2003-Ohio-2117, ¶ 10; *accord Weinsziehr v. Weinsziehr*, 4th Dist. Hocking No. 20CA1, 2021-Ohio-1568, ¶ 14; *Dimalanta v. Dimalanta*, 8th Dist. Cuyahoga No. 108920, 2020-Ohio-6992, ¶ 42.  Thus,

reviewing courts will not reverse a trial court's decision regarding contempt sanctions unless the court abused its discretion. *E.g., Schuman* at ¶ 10; *State ex rel. DeWine v. Miller*, 194 Ohio App.3d 86, 2011-Ohio-2107, 954 N.E.2d 1247, ¶ 16 (4th Dist.). As we noted earlier, "'[a]buse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). Furthermore, in civil contempt cases like the case at bar, a trial court "must provide the contemnor a reasonable opportunity to purge the contempt." *Cornell v. Shain*, 1st Dist. Hamilton No. C-19072, 2021-Ohio-2094, ¶ 46, citing *Burchett v. Miller*, 123 Ohio App.3d 550, 552, 704 N.E.2d 636 (6th Dist.1997); *Tucker v. Tucker*, 10 Ohio App.3d 251, 252, 461 N.E.2d 1337 (10th Dist.1983). "A trial court abuses its discretion when it orders conditions for purging that are unreasonable or impossible for the contemnor to meet." *Schuman* at ¶ 10, citing *Burchett, supra*.

**{¶32}** "The determination of whether a particular purge condition is unreasonable or impossible varies on a case-by-case basis." *Id.* at ¶ 11. Moreover, "[t]he contemnor bears the burden of presenting sufficient evidence at the contempt hearing

to establish that the trial court's purge conditions are unreasonable or impossible for him to satisfy." *Id.*, citing *Szymczak v. Szymczak*, 136 Ohio App.3d 706, 713, 737 N.E.2d 980 (8th Dist.2000); *accord Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 20 (stating that "[p]lacing the burden of showing inability to pay on the party charged with contempt is not unreasonable"). A contemnor's "[u]nsubstantiated claims of financial difficulties do not establish an impossibility defense to a contempt charge." *Wagshul v. Wagshul*, 2d Dist. Montgomery No. 23564, 2010-Ohio-3120, ¶ 41; *accord Liming* at ¶ 23 (trial court did not need "to expressly find that [the father] had the ability to pay" when the father "failed to produce evidence of inability to pay"); *In re I.L.J.*, 8th Dist. Cuyahoga No. 109564, 2020-Ohio-5434, ¶ 14 ("contemnor's unsupported claims of financial difficulty or an inability to pay are insufficient to establish that the trial court's conditions are unreasonable."); *Pettit v. Pettit*, 8th Dist. Cuyahoga No. 64582, 1993 WL 536060, *4 (Dec. 23, 1993) ("unsupported statement of 'I have been broke' will not establish an inability to comply with a court order of child support").

{¶33} In the case sub judice, appellant first asserts that the trial court's contempt order did not give him a reasonable

opportunity to purge the contempt. Appellant contends that the court's purge condition regulates his future conduct and that purge conditions that regulate future conduct are invalid.

**{¶34}** We acknowledge that a purge condition may not "regulate future conduct by conditioning the suspension of a jail sentence on the contemnor making payments on current support obligations." *Frey v. Frey*, 197 Ohio App.3d 273, 2011-Ohio-6012, 967 N.E.2d 246, ¶ 35 (3rd Dist.); *Tucker v. Tucker*, 10 Ohio App.3d 251, 252, 461 N.E.2d 1337 (10th Dist.1983). Purge conditions that require a contemnor to pay an arrearage pursuant to a payment schedule or otherwise do not regulate future conduct, however. *Frey* at ¶ 35, citing *Marden v. Marden*, 108 Ohio App.3d 568, 571, 671 N.E.2d 331 (12th Dist.1996); *accord Vaughn v. Vaughn*, 12th Dist. Warren No. CA2021-08-078, 2022-Ohio-1805, ¶ 39 (trial court did not abuse its discretion by requiring husband to "make 'steady payments' on his $34,500 child support arrearage"); *Cox v. Cox*, 10th Dist. Franklin No. 14AP-490, 2015-Ohio-1660, ¶ 34; *Stychno v. Stychno*, 11th Dist. Trumbull No. 2008-T-0117, 2009-Ohio-6858, ¶ 54 (order not an attempt to regulate future conduct but monthly payment "based solely on arrearages owed"); *In re Kenison*, 10th Dist. Franklin No. 96APF07-975, 1997 WL 284676, *2 (order that "provide[s] for purging by paying the arrearage" gives contemnor "a true

opportunity for purging"). Conditioning a contempt sanction on paying an arrearage requires a contemnor to comply with a preexisting obligation, not a current or future obligation that has yet to give rise to a contempt proceeding. *See Leuvoy v. Leuvoy*, 10th Dist. Franklin No. 00AP-1378, 2001 WL 710123, *2 (June 26, 2001) (noting distinction between purge conditions that attempt to regulate future obligations and purge conditions that set a payment schedule for arrearages). Consequently, courts have held that purge conditions are proper when they suspend a jail sentence on the condition that a contemnor pay an arrearage. *Vaughn*; *Leuvoy*.

**{¶35}** For example, in *Leuvoy* the court determined that a contempt order that suspended the contemnor's jail sentence upon the condition that he pay $1,250 per month to "liquidate" his child and spousal support arrearages did not attempt to regulate the contemnor's future conduct. *Id.* at *1. The court explained that "the order permitted appellant to purge by making monthly payments on the arrearage amount." *Id.* at *2. The court further distinguished the arrearage-payment purge condition from purge conditions that regulate future conduct. The court noted that in the future-conduct purge cases, any arrearage (1) "had been paid"; (2) "did not exist at the time the judgment in contempt was entered"; and (3) "the order was directed only to

future conduct." *Id.* The *Leuvoy* court pointed out that, in the case before it, the contemnor had not paid the arrearage before the court entered its contempt finding. The court thus concluded that the contempt order did not attempt to regulate future conduct.

**{¶36}** In *Tucker*, on the other hand, the court held that a civil contempt order did not provide the contemnor a reasonable opportunity to purge the contempt when the court suspended punishment on the condition that the contemnor comply in the future by paying his child support obligation. The court stated as follows:

> "Had the order provided for suspending the jail sentence on condition that plaintiff purge himself of his violation of the support order by paying the arrearage, it would have provided a true opportunity for purging. However, insofar as it purports to regulate future conduct, it simply amounts to the court's reaffirmation of its previous support order and can have no effect since any effort to punish a future violation of the support order would require new notice, hearing, and determination."

*Id.* at 252.

**{¶37}** In the case at bar, we do not believe that the trial court's purge condition attempts to regulate future conduct as contemplated in *Tucker*. Instead, the court's purge condition, similar to the purge condition in *Leuvoy*, sets a payment schedule for the amount of money that appellant failed to pay

under the consent order.  Thus, this particular purge condition is a payment schedule to satisfy a preexisting obligation, an arrearage, not an order to make payments to satisfy a current or future obligation.

**{¶38}** Additionally, we reject any argument that the trial court erred by failing to expressly find that appellant has the ability to pay the money owed under the consent order.  Here, appellant did not present any evidence regarding his claimed inability to pay.  Therefore, under *Liming*, the trial court did not have any duty to find that appellant had the ability to pay. *Liming* at ¶ 23 (trial court did not need "to expressly find that [the father] had the ability to pay" when the father "failed to produce evidence of inability to pay").

**{¶39}** Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

HOCKING, 22CA2

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.